No. 14701

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

---

JAMES C. SPURLOCK,

                    Petitioner,

        -vs-

ROGER W. CRIST, Warden,

                    Respondent.

---

ORIGINAL PROCEEDING

Counsel of Record:

        For Petitioner:

        Fred Van Valkenburg, Missoula, Montana

        For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
        Robert Deschamps, III, County Attorney, Missoula,
        Montana

---

Submitted:  February 28, 1980

Decided: **JUL** 9 1980

Filed: **JUL** 9 1980

*Thomas J. Kearney*
                                        Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

Petitioner filed a petition for writ of habeas corpus in this Court on February 14, 1979. This Court ordered the writ heard by the District Court of the Fourth Judicial District, County of Missoula, and the Honorable Robert M. Holter assumed jurisdiction for an evidentiary hearing. A hearing was held on June 6, 1979, and July 17, 1979. Findings of fact and conclusions of law denying the writ were filed October 30, 1979. These findings and conclusions have been appealed to this Court, and the matter has been accepted for decision on briefs.

Petitioner and a companion, one Leonard Doney, were arrested on January 18, 1972, eight years ago, and charged with four counts of robbery, all of which were allegedly committed during the early morning hours of January 18, 1972. After a high-speed chase, petitioner was arrested and, while in custody and sitting in the rear seat of a police car, was identified by one of the victims.

After trial and conviction, the conviction was appealed to this Court and submitted November 30, 1972, after oral argument. On February 20, 1973, a unanimous Court affirmed the judgment and conviction. State v. Spurlock (1973), 161 Mont. 388, 506 P.2d 842. Following are some excerpts of pretrial facts from the prior opinion of this Court:

> "The record indicates that on January 28, 1972, an Information was filed in the district court charging each defendant with four counts of robbery upon four Missoula filling stations committed on January 18, 1972. D. R. Matthews, Esq., Missoula Public Defender, was appointed by the court as counsel and he represented both defendants in all stages of pretrial proceedings. Both defendants entered pleas of not guilty and trial was set for May 4, 1972. Bail was fixed in the amount of $15,000 (later reduced to $12,500) for defendant Spurlock and in the amount of $12,500 for defendant Doney. Neither defendant was able to post bail.

"Defendant Doney requested a psychiatric examination and was admitted to the state hospital at Warm Springs on February 2, 1972, remaining there about thirty days. An examination was performed and a report submitted to the court.

"On March 13, 1972, defendant Spurlock filed an affidavit of disqualification of trial judge Hon. Emmet Glore, which was granted. The cause was transferred to the court of Hon. E. Gardner Brownlee.

"On April 5, 1972, defendant Spurlock submitted motions for a psychiatric examination by a local psychiatrist and for separate counsel. Both motions were denied. Subsequent testimony by Spurlock's wife indicated that he had been to Warm Springs for treatment and/or examination on some previous occasion and that he did not wish to return there.

"On April 6, 1972, defendant Doney petitioned the court pro se for a writ of habeas corpus based on violation of his rights at a preliminary examination for probable cause. Judge Jack L. Green, sitting for Judge E. Gardner Brownlee, heard the petition on April 6, 1972, with petitioner present in court and represented by public defender D. R. Matthews, his attorney. After argument the writ was denied.

"On May 3, 1972, one day preceding the trial date, the defendants through their appointed counsel, D. R. Matthews, entered four motions requesting:

"1. Withdrawal of court appointed counsel.

"2. Separate trials.

"3. Separate counsel.

"4. A Continuance.

"The requested continuance was for the claimed purpose of allowing their counsel time to prepare their defense, and to obtain a psychiatric evaluation for defendant Spurlock. [Emphasis supplied.]

"The court denied all four motions. However, prior to trial on May 4, 1972, the motion for withdrawal of counsel was granted and Robert J. Campbell, Esq. was entered as counsel. In granting this motion, the court specifically questioned both defendants after making them aware that their other motions (including the motion for a continuance) would not be granted, as to whether they would still prefer to have Robert J. Campbell substituted as counsel replacing D. R. Matthews. Both defendants stated

-3-

they so preferred. The court then suggested that Matthews remain to participate in the defense and requested both defendants' permission before Mr. Matthews was permitted to leave. Both defendants gave that permission.

"At the time the court was considering the request for substitution of counsel, Mr. Matthews stated: 'They have told me absolutely nothing. They will not confide in me, there has been no communication at all.'

"In their appeal brief, defendants stated 'Prior to trial the defendants remained in the Missoula County jail and sought private counsel as best they could.' The record does not support this statement. It does not disclose that defendants or anyone acting in their behalf, contacted or were refused by any attorney prior to their contacting Mr. Campbell, who did take their case. It does not disclose that defendants were refused permission to contact any attorney while they were in jail. It does disclose that Mr. Campbell was contacted for the first time by Mrs. Spurlock at 4:15 p.m. on May 3, 1972, over three months after the arraignment of defendants and on the afternoon before the trial date." State v. Spurlock, supra, 161 Mont. at 389-391, 506 P.2d at 842-843.

The following issues have been presented to this Court for review:

1. Whether the requirement of joint representation of petitioner and a codefendant over timely objection necessitates a reversal of petitioner's conviction.

2. Whether petitioner was denied effective assistance of counsel prior to trial and, if so, whether such denial affected petitioner's due process rights so as to necessitate a reversal of his conviction.

3. Whether petitioner was subjected to an impermissible showup subsequent to his arrest.

4. Whether petitioner was given inadequate notice of trial, was improperly required to go to trial jointly with his codefendant, and was improperly denied a continuance in his trial so as to necessitate a reversal of his conviction.

5. Whether the failure to provide petitioner with a

transcript of proceedings and failure of the court reporter to file his notes with the clerk of court violate petitioner's right to due process so as to necessitate a reversal of his conviction.

6. Whether the failure to provide petitioner with an opportunity to examine the presentence report and cross-examine any witnesses with respect thereto necessitates the vacation of petitioner's sentence and removal for resentencing.

Issues 1, 2 and 4 were previously litigated in this Court on the argued appeal, State v. Spurlock, supra, and will not be reviewed a second time on appeal.

Issue 3 concerns the identification in the police vehicle on the night of the crime. Courts have universally held that a showup is not unlawfully suggestive where the confrontation was conducted shortly after the commission of the crime. In Stovall v. Denno (1967), 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199, the United States Supreme Court approved an identification showup where the defendant was brought to the victim's hospital room shortly after the crime was committed. Similarly, where the defendant was immediately returned to the vicinity of the crime and placed in a patrol wagon and while he was inside the vehicle he was viewed by the complaining witnesses, one of whom specifically identified him as her attacker, the court held in Bates v. United States (1968), 132 App.D.C. 36, 405 F.2d 1104, that the defendant's identification, which was introduced at the trial, was not the result of an unnecessarily suggestive confrontation and did not, therefore, deny him due process. See also 39 A.L.R.3d 791.

In regard to Issue 5, the matter of a free transcript, petitioner's argument on this point seems to be that he was

denied a trial transcript and hence, due process, since the court reporter's notes were kept with the court reporter rather than the clerk of court. In fact, the reason he was denied a transcript is set out in the District Court's Finding of Fact No. II as follows:

> ". . . Until the filing of this petition, the petitioner had acted in concert with his code-fendant, Leonard E. Doney, in attempting to get a free transcript, but until the present peti-tion, neither the petitioner nor Doney had al-leged anything to warrant moving any court's discretion to order a free transcript prepared, as evidenced by an order of Judge Brownlee dated October 11, 1973, and filed in this cause and an order by Judge Russell Smith dated January 17, 1979, and entered in Federal District Court for the District of Montana, cause no. 2392."

Whatever the legality or wisdom of court reporters keeping their notes, that practice did not deny petitioner a transcript, nor does the matter constitute any constitu-tional issue mandating any relief for petitioner.

Issue 6 claims error due to irregularities with respect to petitioner's presentence report. Petitioner was con-victed of four counts of robbery and was sentenced under the provisions of former section 95-1506, R.C.M. 1947, providing for increased punishment based on prior convictions. He received a sentence of fifty years in the Montana State Prison. Petitioner now states he was prejudiced because he claims he did not have an opportunity to examine the pre-sentence report prior to sentencing nor to cross-examine witnesses with respect to the report.

The principal point in connection with this issue is the fact that petitioner has not pointed to a single error or ambiguity in his presentence report. This Court has previously held that a convicted defendant has a due process guarantee against a sentence predicated on misinformation,

but he cannot complain if the information in a presentence report is true. State v. Osborn (1976), 170 Mont. 480, 555 P.2d 509. That is clearly the case here. Unless petitioner can show something erroneous in the presentence report, he will not be granted a resentencing.

The findings of fact and conclusions of law of the District Court are affirmed and accepted; the writ of habeas corpus is dismissed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices