Christina L. TERRY, Appellant
(Plaintiff),

v.

Todd E. SWEENEY, Appellee
(Defendant).

No. 99–327.

Supreme Court of Wyoming.

Sept. 6, 2000.

Representing Appellant: Stephen R. Winship of Winship & Winship, P.C., Casper, Wyoming.

Representing Appellee: John A. Sundahl and Brian J. Hanify of Sundahl, Powers, Kapp & Martin, Cheyenne, Wyoming.

Before LEHMAN, C.J., and THOMAS, GOLDEN, HILL & KITE, JJ.

KITE, Justice.

This appeal is taken from several trial court orders issued during the course of Plaintiff–Appellant Christina L. Terry's (Terry) personal injury action including orders granting a mistrial, awarding Defendant–Appellee Todd E. Sweeney (Sweeney) costs attendant to mistrial to be paid by Terry, and dismissing the action due to failure to pay the assessed costs. Finding no error or abuse of discretion, we affirm.

## ISSUES

This statement of the issues is found in Terry's brief:

1. When the district court conditions a litigant's access and ability to have her cause of action heard upon payment of costs in a sum that the district court is aware that the litigant cannot afford to pay, ha[ve] the litigant's state and federal constitutional rights of access to the courts, due process, and equal protection been improperly denied[?]

2. Whether the district court erred in declaring a mistrial because of the inadvertent reference by one of the Plaintiffs to the possibility that Defendant had liability insurance.

3. Whether the district court has any statutory or inherent power to assess attorney fees and costs resulting from a mistrial, and then to require payment of these fees and costs, prior to allowing the retrial of the matter.

4. If the assessment of fees and costs was proper, should it have been assessed only against the Plaintiff, Dale Sprague[?]

5. Whether the district court should have delayed assessing costs resulting from the mistrial by [not] requiring their payment until after the retrial of the matter.

6. When the district court made the payment of Defendant's fees and costs from the mistrial a precondition to a retrial of the matters, did the district court abuse its discretion by not allowing Plaintiffs' counsel to advance said costs[?]

7. Whether the district court erred by allowing Defendant to refer to the fact that Plaintiff had filed several worker['s] compensation claims for injuries not related to the subject injury in order to infer to the jury that she was "claims minded."

8. Whether the district court erred by denying Plaintiffs' request to present expert rebuttal testimony.

Sweeney restates the issues in his brief as follows:

1. Whether the trial court abused its discretion in granting a mistrial[.]

2. Whether sanctions directed to costs and attorney's fees associated with preparation for a particular jury trial may be properly imposed for a mistrial.

3. Whether, given the totality of the circumstances, it was appropriate to dismiss with prejudice for failure to prosecute and to comply with prior orders of the Court.

4. Whether imposition of sanctions denies access to the courts, procedural due process or equal protection.

5. Whether the trial court abused its discretion in holding that evidence relating to Worker's Compensation claims were admissible and in denying leave to present rebuttal testimony.

## FACTS

On December 23, 1994, Terry and her then-husband, Dale E. Sprague (Sprague), filed suit for damages against Sweeney, alleging his negligence caused a motor vehicle accident on April 19, 1993. The trial court granted a motion in limine which precluded the plaintiffs from making any reference to Sweeney having insurance coverage pursuant to W.R.E. 411. The court qualified the preclusion to permit limited inquiry of jurors regarding their professional relationships with insurance companies and the threshold questions as allowed under *Wardell v. McMillan*, 844 P.2d 1052, 1063 (Wyo.1992). During jury selection, Sweeney moved for a mistrial, asserting a violation of the court's order with regard to insurance references. The motion was denied. Thereafter, Sprague, as the first witness, recounted a conversation between Terry and Sweeney

just subsequent to the vehicle accident as follows:

> Chris first asked him what—what the hell he thought he was doing. Todd was very apologetic, apologizing for hitting us. He kept saying that there was something wrong with the brakes.
>
> And when asked, you know, for any information, all he would say is—would tell Chris was what his first name was, my name is Todd, *but I don't know anything about the insurance* ; I can't give you that information, and that—that his father—

(Emphasis added.) Sweeney again moved for a mistrial on the basis of the reference to insurance coverage. This motion was granted and subsequently memorialized in a written order filed November 6, 1996. On November 19, 1996, Sweeney filed motions requesting costs [1] in the amount of $9,469.80 and sanctions be assessed against the plaintiffs because of the mistrial. A hearing was held December 2, 1996, and the Order Awarding Costs, filed December 3, 1996, reflected in relevant part as follows: "[T]he Court finding that the Defendant's Amended Motion for Costs and Sanctions should be granted *based upon Plaintiffs['] violation of the Court's Order on Pending Motions* in this case, *which violation resulted in the mistrial* of the jury trial in the action." (Emphasis added.) And further:

> NOW, THEREFORE, IT IS ORDERED that the Defendant's Amended Motion for Costs and Sanctions is hereby granted, and that costs in the total sum of $2,756.70 [2] are hereby awarded in favor of Defendant . . . Sweeney, and against Plaintiffs . . . Terry and . . . Sprague, *for Plaintiffs['] violation of the Court's Order on Pending Motions resulting in the*

*mistrial of the jury trial* in this case on October 28, 1996; . . .

(Emphasis added.)

On December 10, 1996, the plaintiffs filed a Motion to Alter or Amend Order Awarding Costs, asserting that Terry should not be held jointly and severally liable with Sprague for the award because she did not violate the trial court's order. Subsequent to a hearing held March 14, 1997, the court found in its Order on Pending Motions,[3] filed March 18, 1997, as follows:

> [T]he Plaintiffs' Motion to Alter or Amend Order Awarding Costs should be denied since the mistrial which resulted in the award of costs and attorney's fees against the Plaintiffs occurred in the presentation of the case in chief being presented (a) on behalf of both Plaintiffs, and (b) in support of the Amended Complaint seeking damages on behalf of both Plaintiffs; . . .

Based on this reasoning, the trial court denied the plaintiffs' Motion to Alter or Amend Order Awarding Costs.

In the next two plus years, multiple motions were filed by the parties requesting respectively that the matter be set for trial or dismissed due to lack of payment of the sanction costs, all of which the trial court denied. At one point, the trial court set a payment deadline for the plaintiffs to pay the ordered costs which was not met. Thereafter, the trial court continued the trial indefinitely pending payment and subsequently set a second and final payment deadline. During these protracted proceedings, the trial court denied the plaintiffs' counsel's request to pay the costs himself. The court made it clear that the plaintiffs were personally responsible for payment of the costs as they were the parties responsible for the mistrial. The plaintiffs also filed a Petition for Writ of Review with this Court on July 7, 1997, which was denied on August 5, 1997. *Terry*

---

**1.** As set out in the Amended Motion for Costs and Sanctions, Sweeney asserted the costs expended in preparation for trial, which could not be used in a subsequent trial, included $9,091 in lost fee time and $378.80 for lost costs of subpoenas, transcripts, and service fees.

**2.** Pursuant to the Order Awarding Costs, the trial court reduced the lost fee time from $9,091, as

requested in the Amended Motion for Costs and Sanctions, to $2,377.90 and awarded the full lost costs requested of $378.80.

**3.** The court also denied a Motion for Clarification in the March 18, 1997, Order on Pending Motions. That aspect of the order is not addressed as it is not relevant to this appeal.

v. District Court for Seventh Judicial District, No. 97–194. The last court ordered payment deadline of August 31, 1999, was not met, and Sweeney filed a Renewed Motion to Dismiss with Prejudice on September 1, 1999. On November 1, 1999, nearly three years after the original order setting out the sanction, the trial court entered an Order of Dismissal, dismissing the plaintiffs' claims with prejudice. Terry then appealed to this Court.

## DISCUSSION

### A. Declaration of Mistrial

■ "The court's ruling on a motion for mistrial ... is reviewed for an abuse of discretion." *Espinoza v. State*, 969 P.2d 542, 546 (Wyo.1998), *cert. denied*, 528 U.S. 818, 120 S.Ct. 59, 145 L.Ed.2d 52 (1999); *see also Ross v. State*, 930 P.2d 965, 968 (Wyo.1996). " 'Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously.' " *Vaughn v. State*, 962 P.2d 149, 151 (Wyo. 1998) (quoting *Martin v. State*, 720 P.2d 894, 897 (Wyo.1986)); *see also Stroup v. Oedekoven*, 995 P.2d 125, 128 (Wyo.1999).

> In determining whether there has been an abuse of discretion, we focus on the "reasonableness of the choice made by the trial court." *Vaughn*, 962 P.2d 149, 151 (Wyo. 1998). If the trial court could reasonably conclude as it did and the ruling is one based on sound judgment with regard to what is right under the circumstances, it will not be disturbed absent a showing that some facet of the ruling is arbitrary or capricious.

*Jordan v. Brackin*, 992 P.2d 1096, 1098 (Wyo.1999).

■ An Order on Pending Motions, issued three days before the trial, specifically precluded evidence related to whether a person was or was not insured pursuant to W.R.E. 411.[4] The purpose of W.R.E. 411 "is to prevent the deliberate introduction of evidence of liability insurance coverage in tort actions premised on negligence." *Parker v. Artery*, 889 P.2d 520, 526 (Wyo.1995).

■ During the testimony of the plaintiffs' first witness, Co–Plaintiff Sprague made a specific reference to insurance. Sweeney's counsel promptly moved for a mistrial, which the trial court granted. In reliance on *Elite Cleaners and Tailors, Inc. v. Gentry*, 510 P.2d 784 (Wyo.1973), Terry urges that the reference to insurance was inadvertent and the trial court could have taken a less onerous action than granting a mistrial. The determination of whether Sprague's statement was inadvertent or intentional is one best left to the trial court. Absent the opportunity to observe the witness' demeanor in the courtroom setting, a review of the transcript excerpt reveals only the bare words devoid of the context and true circumstance as existed in the courtroom on the day and hour it occurred. Whether or not the same sanction would be deemed warranted by this Court, the evaluation is for the trial court, and an appellate court cannot easily second-guess the conclusions of the decision maker who heard and observed the witnesses. *Gresham v. State*, 708 P.2d 49, 56 (Wyo.1985). It seems apparent that, even if the initial decision was a knee-jerk reaction, the court had sufficient time in the intervening days between the original declaration of a mistrial and issuance of the written order to fully reconsider its ruling.

In *Elite Cleaners and Tailors, Inc.*, the trial court denied the motion for mistrial under similar circumstances, and this Court presumed that the trial court found the term "insurance" was inadvertently and not deliberately injected into the record. The converse situation presents itself here. Based on the trial court's swift action at trial and subsequent issuance of a written Order Granting Mistrial, we presume that the court found Sprague's mention of the term "insurance" to be deliberate. Further, we presume

---

4. As noted in the review of the facts, the preclusion against the mention of insurance coverage was qualified in the Order on Pending Motions to permit limited inquiry of jurors regarding their professional relationships with insurance companies and the threshold questions as allowed under *Wardell*, 844 P.2d at 1063.

that, in declaring a mistrial, the trial court determined it was the necessary and least onerous action required to cure any possible prejudice. The trial court has the authority to take such action "by virtue of its inherent power and duty to assure a fair and impartial trial." *Engle v. State*, 821 P.2d 1285, 1289 (Wyo.1991). Although declaration of a mistrial is a harsh remedy and we do not endorse its use in any rote or mechanical manner, this Court has recognized that "[t]here comes a time ... if the misconduct is sufficiently severe, damage control by objection and special instruction may not suffice to avoid mistrial or reversal." *Barela v. State*, 787 P.2d 82, 87 (Wyo.1990). For these reasons, "we are unwilling to second-guess the court's ruling under these circumstances; consequently, we find no abuse of discretion."*Brown v. State*, 953 P.2d 1170, 1178 (Wyo.1998).

**B. Imposition of Sanction Costs; Refusal to Limit Sanction to One Co-Plaintiff; Refusal to Delay Imposition of Sanction Pending Retrial; Refusal to Permit Counsel to Pay Sanction Costs on Behalf of Clients**

■ Terry takes issue with the imposition of the sanction itself; the trial court's refusal to limit the sanction to her co-plaintiff, Sprague, who violated the order by his testimony; the trial court's refusal to delay imposition pending retrial; and the trial court's refusal to permit counsel to pay the sanction on his clients' behalf. Terry essentially argues the trial court lacked authority through either rule or statute to impose the costs sanction against her for causing the mistrial. We believe the authority for both the sanction and the method of assessment is founded in the inherent authority of all courts to "take actions reasonably necessary to administer justice efficiently, fairly, and economically and [to ensure] the court's existence, dignity, and functions."[5] 20 Am.Jur.2d

Courts § 43 at 363 (1995). As this Court noted in *Bi-Rite Package, Inc. v. District Court of Ninth Judicial District of Fremont County*, 735 P.2d 709, 714 (Wyo.1987) (emphasis added):

> It is unquestioned that courts have inherent powers beyond those specified in rules and statutes that are absolutely necessary to the courts' ability to perform the functions for which they were created....
>
> ... [I]t is said that courts possess an inherent power described as
>
> > "an extremely narrow range of authority involving activity so fundamental to the essence of a court as a constitutional tribunal that to divest the court of absolute command within this sphere is really to render practically meaningless the terms 'court' and 'judicial power.'" *Eash v. Riggins Trucking, Inc.*, 757 F.2d 557, 562, 77 A.L.R.Fed. 751 (3rd Cir.1985).
>
> This power is essential to the separation of powers concept and allows a court to act notwithstanding contrary legislative direction. *There is also an inherent power that is described as necessary to the efficient functioning and prompt and just disposition of litigation and business of the court .... Finally, there is an inherent power to take such action as is useful to the efficient functioning of the court.*

The record contains no transcripts of the trial, except the excerpt of Sprague's brief testimony previously referenced, and contains no transcripts for any of the subsequent related hearings. As this evidence is unavailable, we must assume the trial court conducted itself in a reasonable and rational manner. The trial court issued a detailed Order Granting Mistrial and subsequent Order Awarding Costs by which it clearly justified the declaration of mistrial and the sanction on the basis of the plaintiffs' violation of

**5.** This Court has held that the following sanctions have their basis in the concept of the court's inherent authority: punishment for contempt, *Bi-Rite Package, Inc. v. District Court of Ninth Judicial District of Fremont County*, 735 P.2d 709, 712 (Wyo.1987); dismissal for lack of prosecution, *Randolph v. Hays*, 665 P.2d 500, 503 (Wyo.1983); sanction to ensure fair and

impartial trial, *Engle*, 821 P.2d at 1289; discipline of counsel for failure to comply with pretrial conference orders, *Glatter v. American National Bank of Powell*, 675 P.2d 642, 644 (Wyo. 1984); sanction for violation of sequestration order, *Cook v. State*, 7 P.3d 53, 58–59 (Wyo. 2000); and entry of default judgment, *Ruwart v. Wagner*, 880 P.2d 586, 592 (Wyo.1994).

the pretrial order. The trial court's reduction of the attorney fees by more than $6,000 demonstrates its careful review. Based on the trial court's actions, there is a presumption that it determined the violation of its pretrial order to be deliberate.

The court's reasons for refusing to limit the sanction to Sprague were clearly spelled out. The violation of the pretrial order "occurred in the presentation of the case in chief being presented *(a) on behalf of both Plaintiffs*, and *(b) in support of the Amended Complaint seeking damages on behalf of both Plaintiffs*." (Emphasis added.) The court logically concluded that the plaintiffs, acting in concert to obtain damages, should be sanctioned in concert for misconduct.

Terry also asserts error that the trial court did not delay imposition of the costs pending retrial. To this Court, the sanction appears aimed at bringing the parties into essentially the same financial position with regard to the litigation as they held prior to the mistrial. Further, it appears to be intended to deter the plaintiffs from again violating a trial court order with impunity. Neither of these purposes would be met if assessment were withheld pending retrial.

Terry argues the trial court erred in refusing to permit her counsel to pay the costs on behalf of his clients. The trial court made it clear that the sanction was to be paid by the plaintiffs because the mistrial was a direct consequence of their violation of the pretrial order. The intended deterrent effect of the sanction on Terry would have been undermined by permitting her counsel to cover the payment.

On the basis of these particular facts and circumstances, we find the trial court acted within its inherent authority to ensure its efficient functioning and the prompt and just disposition of litigation. "An inherent power to impose the sanctions has been recognized because of the special circumstances, although support for those sanctions may not be found in particular rules and legislative enactments." *Bi–Rite Package, Inc.*, 735 P.2d at 716. As the sanction was within the trial court's inherent authority, so too was the method and manner of assessment.

## C. Access to the Courts

Terry contends the trial court's requirement that she pay the sanction costs prior to a new trial constituted denial of access to the courts. Despite Terry's extensive review of the case law pertaining to access to the courts, equal protection, and due process, the position asserted is not well founded in the facts. We acknowledge "that the right to access to the courts is a fundamental right pursuant to Article 1, Section 8" of the Wyoming Constitution. *Mills v. Reynolds*, 837 P.2d 48, 54 (Wyo.1992). However, no convoluted reasoning or twisted view of the facts will change what is apparent on the face of the record. Terry had access to the courts when she filed her personal injury action, conducted discovery, had a trial scheduled and pretrial orders issued, and, on October 28, 1996, began her trial in court. Although the plaintiffs were literally in court, having been provided the requisite access, Sprague deliberately violated a court order, and a mistrial was declared.

■ It is generally recognized that a court does not violate an open courts provision when it acts to punish conduct that disrupts the orderly administration of justice. *See, e.g., Jensen v. Zuern*, 517 N.W.2d 118, 129 (N.D.Ct.App.1994); *Williams v. State*, 405 N.W.2d 615, 624–25 (N.D.1987); *Protect Our Mountain Environment, Inc. v. District Court in and for County of Jefferson*, 677 P.2d 1361, 1367 n. 6 (Colo.1984) (en banc); *Eismann v. Miller*, 101 Idaho 692, 619 P.2d 1145, 1150 (1980). The record reflects no effort by Terry to make any level of payment, no matter how small. It is specious to argue that, despite an almost three-year grace period, the court's sanction constituted denial of access to the courts to a plaintiff who was already physically in court and who made no apparent efforts to comply with its orders. Holding as Terry requests could be interpreted to mean that individuals of limited resources can violate court orders with impunity and suffer no consequence while those of more substantial resources shall bear the cost. This would be an equal protection issue. Or perhaps no one, regardless of means, shall bear the cost. On this point,

we agree with the trial court when it stated: "If a party is allowed to disregard the orders of the court, then surely our entire justice system will fail." We find no denial of access or abuse of discretion in the trial court requiring payment of the sanction costs prior to resetting the matter for trial.

### D. Dismissal

Finally, we turn to the question of the propriety of the dismissal. We stated in *Mora v. Husky Oil Company*, 611 P.2d 842, 846 (Wyo.1980) (citation omitted): "Broad discretion is given to the trial court with regard to sanctions, even to the point of dismissing the action." It is well established that a court has the inherent authority to dismiss a matter on its own motion for lack of prosecution. *WR v. Natrona County Department of Family Services (In re DG)*, 916 P.2d 991, 994 (Wyo.1996); *Randolph v. Hays*, 665 P.2d 500, 503 (Wyo.1983). Here, the trial court waited more than thirty-four months after issuance of the order of sanction and allowed two payment deadlines to pass before it granted the Renewed Motion to Dismiss with Prejudice. Even at that, the order did not issue for a full two months from the date of the filing of the Renewed Motion to Dismiss with Prejudice. We can only speculate how the trial court's evident restraint and patience might have been impacted had Terry made even the most modest effort to comply. Although dismissal is a harsh penalty, under the specific circumstances of this case, we conclude the trial court was within its inherent authority and there was no abuse of discretion.

### CONCLUSION

We do not need to address the remaining issues raised by Terry, namely the worker's compensation motion in limine ruling and the request to present expert testimony, as they had relevance only in the event of a retrial.

Affirmed.